1

********************

TRANSCRIPTION OF THE AUDIO CASSETTE TAPE OF THE ORAL ARGUMENTS IN THE CASE OF WEIDMAN VERSUS FEDERAL HOME LOAN MORTGAGE CORPORATION, CIVIL ACTION NO. 02-7990

******************

ERSA OF PA

30 South 17th Street

Philadelphia, Pennsylvania 19103

(215) 564-1233



1  and that's just the notice situation,
2  notification?
3          MR. NICHOLAS:  Yeah.
4          THE CHAIRPERSON:  But in
5  terms of, is Fredie Mac a credit
6  reporting agency, that's still before
7  us?
8          MR. NICHOLAS:  It is.
9  Fredie Mac is not a credit reporting
10 agency.  I'm as comfortable with the
11 plain language of the statute.
12         PANEL MEMBER:  Yes, please
13 address the plain language argument
14 that your adversary has made, because
15 I would be very interested to hear how
16 you square your position with the
17 plain language of the statute.
18         MR. NICHOLAS:  I will.
19         THE CHAIRPERSON:  I think
20 it -- from our questions, I, for one,
21 perhaps the rest of the Panel, are not
22 convinced that the joint user theory
23 of the District Court works, and we
24 all need to address that, but I think

1  we're really interested in the
2  definition.
3          PANEL MEMBER:  I join that.
4          MR. NICHOLAS:  Okay.
5  Although, and I won't dwell on that
6  except to say, I think the joint user
7  analysis is totally appropriate.  If
8  you ever get as far as determining if
9  this would otherwise be a CRA, I don't
10 think -- I'm sure you don't get that
11 far.
12         THE CHAIRPERSON:  Take us
13 through the trial judgement.
14         PANEL MEMBER:  -- is getting
15 a little confused.  He said I'm not
16 going to decide whether it's a CRA,
17 and then he applies the joint task,
18 which is an exception to --
19         PANEL MEMBER:  Well, let's
20 get to the plain language questions.
21         MR. NICHOLAS:  Sure, we will
22 do that.
23         A consumer reporting agency
24 is a person that regularly assembles

1   or evaluates consumer credit
2   information for the purpose of
3   furnishing consumer reports to third
4   parties.  Start with that.
5           First of all, Fredie Mac
6   plainly does not assemble.  It does
7   not assemble.  The credit bureau --
8           THE CHAIRPERSON:  But you
9   evaluate.  It says assemble or
10  evaluate --
11          MR. NICHOLAS:  It does not
12  evaluate either.  I'm taking this word
13  by word.
14          THE CHAIRPERSON:  How can
15  you not evaluate consumer credit
16  information.  You get all of this
17  material, you put it in to Loan
18  Prospector and spit out an evaluation.
19          MR. NICHOLAS:  It is only
20  indicating the level of underwriting
21  that Fredie Mac would require for
22  purchase of the loan on the secondary
23  market.  That is the sole and limited
24  and only thing that the software, not

34

1  Fredie Mac, but the software does.
2  And that is not evaluating between,
3  within the meaning of this statute.
4           It is the communication of a
5  standard, just as either Judge Roof or
6  Judge O'Neil said in one of their two
7  recent opinions that look at this
8  exact issue.
9           THE CHAIRPERSON:  Look at
10 Page 33 -- look at what's at 332 and
11 says -- there's a lot of things here
12 that says --
13          MR. NICHOLAS:  Those things
14 are simply restatements --
15          THE CHAIRPERSON:  --
16 analysis of ratios recommended.
17 Analysis of total debt ratio is
18 recommended.  Derogatory public record
19  -- I mean, how could you say this is
20 not an evaluation?
21          MR. NICHOLAS:  Two things
22 about that.  First of all, those
23 things are either word for word or
24 virtual word-for-word restatements of

1   what came from the credit reports, the
2   underlying credit reports.
3           Secondly, back before the
4   statute was amended by the Fact Act,
5   this kind of data wasn't information,
6   even if you called it an evaluation,
7   it wasn't subject to disclosure under
8   the FCRA.
9           The Fact Act was actually
10  amended and now requires disclosure of
11  such evaluations. But it exempts, it
12  exempts information. It exempts the
13  output of automated underwriting
14  software.
15          PANEL MEMBER: Let me go
16  back to a more basic point, and I may
17  even part company, so I don't whether,
18  if Fannie Mae or Fredie Mac, either
19  one of them, let's take Fredie Mac,
20  says, I wouldn't buy this loan or I
21  might hesitate to buy this proposed
22  loan on the secondary market, or it's
23  some day offered to me, does that
24  impact the credit worthiness of the

1    borrower?  The borrower is never going

2    to be able to buy a home.  That is the

3    very purpose of Loan Prospector.

4              MR. NICHOLAS:  No.

5              PANEL MEMBER:  If I go out

6    to try to have a home loan, you know

7    or well know because it's in the

8    papers, part of you conceded it, that

9    the whole world wants to comply with

10   Fredie Mac or Fannie Mae's standards

11   because they know that makes the thing

12   marketable on the second market.  I

13   have seen, when I was practicing, we

14   were using Fredie Mac forms even for

15   loans we knew were never going to

16   Fredie Mac.  I mean --

17             MR. NICHOLAS:  Well,

18   that's --

19             PANEL MEMBER:  They say, we

20   wouldn't buy this loan, or we would

21   hesitate to buy this loan, caution,

22   doesn't that impact the credit

23   worthiness of the borrower, very, very

24   directly?

37

1          MR. NICHOLAS: There is no
2   record -- first of all, there is no
3   record in this case that that was the
4   case, none.
5          Secondly, the only sort of
6   statistical data profile there is in
7   the case, is that of the loans that
8   Fredie Mac purchased in a year in
9   question, only 25 percent of them even
10  came through Loan Prospector.
11         THE CHAIRPERSON: All
12  right. But let me backup a little.
13  When you say, there's no evidence, the
14  definition is information that bears
15  on. I don't read that as an
16  evidentiary matter, I read that as
17  something that a court can determine,
18  you know, as a finding on, is this the
19  type of information that would
20  normally bear on a consumer's credit
21  worthiness?
22         MR. NICHOLAS: I would say
23  it does not. It bears only on whether
24  Fredie Mac, not even whether it would

38

1  purchase the loan on the secondary
2  market, but of the standards by
3  which -- by the standards it would
4  apply --
5           PANEL MEMBER:  So Fredie Mac
6  doesn't care about credit risk or the
7  capacity of particular consumers to
8  fulfill their obligations?
9           MR. NICHOLAS:  Fredie Mac is
10 providing --
11          PANEL MEMBER:  -- when it
12 makes a --
13          MR. NICHOLAS:  Fredie Mac is
14 providing a service to the lenders and
15 that is all it's doing.  It is
16 providing software which the lenders
17 can use or not use.
18          THE CHAIRPERSON:  But it
19 knows how this information is used and
20 knows that it's giving information
21 that bears on credit worthiness,
22 doesn't it?
23          MR. NICHOLAS:  It is not
24 providing information -- the

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

39

1   information that bears on credit
2   worthiness, if there is any, is the
3   data that is communicated from the
4   credit bureaus to the lenders.
5           PANEL MEMBER:  The word,
6   caution, it's that word alone,
7   caution.  I mean, there would be a lot
8   of lenders and mortgage brokers who
9   would drop dead and roll around
10  laughing if you told them that --
11          THE CHAIRPERSON:  Fredie
12  Mac's word of caution --
13          PANEL MEMBER:  -- that
14  Fredie Mac's word of caution doesn't
15  bear on the credit worthiness of
16  whether they --
17          MR. NICHOLAS:  I don't
18  know --
19          PANEL MEMBER:  One of them
20  is my spouse, who is a commercial
21  lender.
22          MR. NICHOLAS:  There are,
23  however --
24          PANEL MEMBER:  That's what I

40

1  did for a living as a lawyer for 30
2  years, representing mortgage brokers,
3  commercial lenders.  They would die
4  laughing.
5           MR. NICHOLAS:  Although
6  there are three judges in this
7  district who looked at this exact
8  issue within the last year and a half
9  --
10          PANEL MEMBER:  Who?
11          MR. NICHOLAS:  Judge Roof.
12          PANEL MEMBER:  In what
13 case?
14          MR. NICHOLAS:  Judge O'Neil,
15 Barnes.
16          PANEL MEMBER:  Barnes was
17 different facts.
18          MR. NICHOLAS:  But they
19 looked at -- they address the
20 automated underwriting software.
21          THE CHAIRPERSON:  Judge
22 O'Neil talked about Loan Prospector as
23 a tool, as an underwriting tool, but
24 can we differentiate and separate

41

1   Fredie Mac from Loan Prospector?

2           MR. NICHOLAS:  Of course.

3           THE CHAIRPERSON:  I mean,
4   Loan Prospector when it acts is Fredie
5   Mac, is it not?

6           MR. NICHOLAS:  No.  I'm not
7   sure where you get that if this is
8   licensed software.  Fredie Mac is
9   licensing --

10          THE CHAIRPERSON:  But it
11  owns -- I'm sorry, I don't mean to
12  interrupt you.

13          MR. NICHOLAS:  That's okay.

14          THE CHAIRPERSON:  You're
15  saying it's licensed software, but
16  that doesn't really answer the
17  question.  It owns, it is the
18  licenser, correct?  It licenses the
19  software, correct?

20          MR. NICHOLAS:  But it
21  doesn't give the software -- it's not
22  like Lehman Brothers has word perfect
23  installed on its computer.  It keeps,
24  it in its home base.  It's using it.

42

1   The word license is almost
2   (inaudible).
3          MR. NICHOLAS:  Well, I
4   don't --
5          PANEL MEMBER:  Here they
6   have developed an algorithm.  They put
7   it on a computer, because it is easier
8   to do, and they get all this
9   information, run it through their --
10  an algorithm can be shown manually.
11  It's just that the computer does it a
12  lot faster.
13         MR. NICHOLAS:  Look --
14         PANEL MEMBER:  Did you read
15  the testimony of the witnesses?
16         MR. NICHOLAS:  I was there.
17         PANEL MEMBER:  They all say
18  that.  Your witnesses say that.
19         MR. NICHOLAS:  Look at it
20  from the back forward.  Let's say the
21  plaintiffs somehow won their case and
22  you concluded that Fredie Mac was a
23  consumer reporting agency, what
24  remedy -- the reason that it's so