WO                          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


JAMES and KATHLEEN McCALMONT,          )
                                       )
                      Plaintiffs,      )
                                       )
              vs.                      )
                                       )
FEDERAL NATIONAL MORTGAGE              )
ASSOCIATION, et al.,                   )
                                       )          No. 2:13-cv-2107-HRH
                      Defendants.      )
_____)


O R D E R

Motions to Dismiss

Defendants move[1] to dismiss plaintiffs' complaint.  Plaintiffs oppose the Federal National Mortgage Association's motion to dismiss[2] but do not oppose the Federal Housing Finance Agency's motion to dismiss, although they request that the dismissal be with conditions.[3]  Oral argument was requested and has been heard on the Federal National Mortgage Association's motion to dismiss.

_____

[1]Docket Nos. 14 & 23.

[2]Docket No. 25.

[3]Docket No. 26.

-1-

<u>Background</u>

Plaintiffs are James and Katherine McCalmont.  Defendants are the Federal National Mortgage Association (Fannie Mae) and the Federal Housing Finance Agency (FHFA), as the conservator of Fannie Mae.[4]

Fannie Mae is a government-sponsored enterprise which was created, in part, "to establish secondary market facilities for residential mortgages[.]" 12 U.S.C. § 1716.  Fannie Mae operates exclusively in the secondary mortgage market and does not originate loans. "[M]any mortgage lenders in the United States sell their loans to Fannie Mae."[5]  "Fannie Mae purchases what are known as conventional conforming loans.  These are loans that are not insured or guaranteed by the federal government, are less than $417,000, and have certain prescribed risks characteristics."[6] "Fannie Mae buys these conventional conforming loans and either bundles them as securities and sells them to investors or holds the loans in its own portfolios."[7]  Fannie Mae only buys loans that meet its eligibility criteria which are outlined in its Selling Guide.[8]

---

[4]Complaint at 2, ¶ 1, Docket No. 1.

[5]<u>Id.</u> at 5, ¶ 13.

[6]<u>Id.</u> at ¶ 15.

[7]<u>Id.</u> at ¶ 16.

[8]<u>Id.</u> at ¶ 15.

Fannie Mae "leases or licenses" the Desktop Underwriter (DU) automated underwriting system to lenders and mortgage loan brokers,[9] which Fannie Mae contends allows lenders to determine if a prospective loan will be eligible for sale to Fannie Mae. As explained by counsel at oral argument, the lender obtains an applicant's tri-merge consumer report from the three major credit reporting agencies, Equifax, Trans Union and Experian. This information, along with other information provided by the applicant, is entered into the DU system by the lender. The "DU system [then] assembles[,] reviews, assesses and evaluates all of the information it obtains from the lender and/or broker, and the consumer reporting agencies and/or resellers, including the consumer reports,[10] and generates its own report, known most frequently as the Desktop Underwriting Findings report...."[11] "The DU Findings Report is a detailed report documenting, among other things, the applicant's credit history, credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, assets, income, debt-

---

[9]Id. at 6, ¶¶ 18-19.

[10]Lenders which license the DU system are required to "maintain a separate agreement with any 'consumer reporting agency' ... from which it orders 'consumer reports'[.]" Desktop Underwriter Schedule at 4, ¶ 11, Exhibit 1, Federal National Mortgage Association's Motion to Dismiss, Docket No. 14.

[11]Complaint at 6-7, ¶ 22, Docket No. 1.

to-income ratio, and employment."[12]  The DU Findings Report also indicates whether the applicant would be eligible to have his loan purchased by Fannie Mae and includes "Fannie Mae's recommendation as to whether the lender should grant or originate the loan, deny the loan or approve it subject to certain conditions being satisfied."[13]  If the recommendation is "refer with caution",[14] the "loan casefile ... may be manually underwritten in accordance with the Fannie Mae Selling Guide."[15]

In October 2009, plaintiffs short sold their home.[16]  Plaintiffs allege that "[p]ursuant to Fannie Mae's published Desktop Underwriter Guidelines..., [they] would not be able to qualify for conventional financing for a minimum of two (2) years following this short sale."[17]

Approximately two years after the short sale, in November 2011, plaintiffs attempted to obtain a mortgage from Pinnacle Lending but were "told ... that they would not be approved for financing because their own previous short sale was flagged as a

---

[12]Id. at 7, ¶ 23.

[13]Id.

[14]A "refer with caution" may mean the applicant has a foreclosure or short-sale in his history, which, at the time in question, the DU System coded the same.

[15]DU Underwriting Findings at 1, Exhibit 1, Complaint, Docket No. 1.

[16]Complaint at 9, ¶ 34, Docket No. 1.

[17]Id. at ¶ 35.

'foreclosure' which, per DU Guidelines, would prevent [p]laintiffs from obtaining financing for seven (7) years."[18]   Plaintiffs allege that "Pinnacle Lending obtained and relied upon a DU Finding Report it purchased from Defendant Fannie Mae ... which ... falsely stated that [p]laintiffs['] ... mortgage loans were coded as a foreclosure instead of a short sale."[19] Plaintiffs allege, however, that they were not aware at the time that the DU Finding Report falsely coded their short sale as a foreclosure.[20]

In January 2012, plaintiffs again tried to obtain a mortgage.  This time, they contacted Amerifirst Financial to attempt to obtain a pre-qualification letter.[21]  Plaintiffs obtained a pre-qualification letter on January 31, 2012, but on March 1, 2012, after having had their offer on a home accepted, plaintiffs were told that their loan was denied.[22] Plaintiffs allege, that again, unknown to them, "Amerifirst [had] obtained and relied upon a DU Findings Report it purchased from Defendant Fannie Mae ... which ... falsely stated that [p]laintiffs' ... mortgage loans were coded as a foreclosure instead of a short sale."[23]

---

[18]Id. at 10, ¶ 39.

[19]Id. at ¶ 40.  Plaintiffs' tri-merge report reflected a short-sale, not a foreclosure. Exhibit 2, Complaint, Docket No. 1.

[20]Complaint at 10, ¶ 39, Docket No. 1.

[21]Id. at 11, ¶ 44.

[22]Id. at ¶¶ 45-47.

[23]Id. at ¶ 49.

Plaintiffs, "[k]nowing that the 'foreclosure' notation would prevent approval at most lending institutions[,]" next contacted a private bank, Republic Bank, to explore their financing options.[24]  Plaintiffs were able to obtain financing through Republic Bank, but "this financing is significantly more expensive ... than the terms of the previous loan on which they were prequalified."[25]

In February 2013, plaintiffs "contacted Homeowners Financial Group in hopes of refinancing...."[26]  Plaintiffs allege that a false "foreclosure" notation in a DU Findings Report that "Homeowners Financial obtained and relied upon" prevented them from obtaining refinancing.[27] But, plaintiffs allege that they obtained a copy of the DU Findings Report from Homeowners Financial and discovered for the first time that "the proposed loan was not eligible for delivery to Fannie Mae because of a foreclosure[.]"[28]  The recommendation in plaintiffs' DU Findings Report was "refer with caution", which means that the "loan casefile is ineligible for delivery as a DU loan...."[29] Plaintiffs allege that "even though DU correctly identified [their] previous short sale acknowledging that so long as

---

[24]Id. at 13, ¶¶ 55.

[25]Id. at ¶ 57.

[26]Id. at 14, ¶ 62.

[27]Id. at ¶¶ 63-65.

[28]Id. at 15, ¶ 69.

[29]DU Underwriting Findings at 1, Exhibit 1, Complaint, Docket No. 1.

that short sale was more than two (2) years ago, DU also manufactured a non-existent foreclosure for [them] and referred, i.e., denied, their application[s] accordingly."[30]

On October 16, 2013, plaintiffs commenced this action in which they allege that Fannie Mae violated the Fair Credit Reporting Act (FCRA) by failing to adopt and follow "'reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom [a credit] report relates.'"[31]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiffs' complaint.

## Discussion

"Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'" OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 721 (9th Cir. 2011)).

---

[30]Complaint at 19, ¶ 82, Docket No. 1.

[31]Id. at 21, ¶ 92 (quoting 15 U.S.C. § 1681e(b)).

"In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

Fannie Mae's motion to dismiss

"'Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy.'" Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 674 (9th Cir. 2010) (quoting TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001)). "The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (internal citations omitted). Section 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a [consumer] reporting agency prepared a report containing inaccurate information." Guimond, 45 F.3d at 1333.

Fannie Mae argues that plaintiffs have failed to state a plausible claim under § 1681e(b) because it is not a consumer reporting agency.

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

> Thus, an entity can be deemed a consumer reporting agency if four factors are satisfied: (1) it acts in exchange for compensation of the kind described; (2) it "regularly" "assembles" or "evaluates" information on consumers; (3) its purpose in doing so is to furnish consumer reports; and (4) it utilizes interstate commerce in the preparation or furnishing of a consumer report.

Lewis v. Ohio Professional Electronic Network LLC, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002) (quoting 15 U.S.C. § 1681a(f)).

The parties' arguments focus on the second factor, whether Fannie Mae regularly assembles or evaluates information on consumers. Plaintiffs argue that they have alleged facts sufficient to show that it is plausible that Fannie Mae regularly assembles and evaluates consumer information. Plaintiffs contend that this is exactly what they have alleged the DU system does, that they have alleged that the DU system assembles and evaluates consumer information in order to provide a preliminary assessment of whether

a loan would meet Fannie Mae's eligibility requirements for purchase.[32]  In short, plaintiffs are arguing that because Fannie Mae's DU system assembles and evaluates consumer information, Fannie Mae is assembling and evaluating consumer information.  Plaintiffs cite to <u>Zabriskie v. Federal National Mortgage Association</u>, Case No. 13-02260-PHX-SRB, slip. op, (D. Ariz. April 17, 2014), in support of their argument.  There, on a motion to dismiss a complaint that is factually similar to plaintiffs' complaint, the court held that "Fannie Mae acts as a 'consumer reporting agency' as the term is defined in the [FRCA] when it licenses its Desktop Underwriter Software."  <u>Id.</u> at 7-8.  This holding was based, in part, on the court's finding that Fannie Mae's "software 'assembles' and 'evaluates' consumer credit information by compiling (i. e., assembling) an individual's credit scores and other information relevant to making lending decisions (such as whether the individual has gone through foreclosure)."  <u>Id.</u> at 7.

This court respectfully disagrees with the result reached by the court in <u>Zabriskie</u>. It is lenders which obtain an applicant's credit reports from credit reporting agencies and it is the lenders which input information about the applicant into the DU system, which then analyzes the information.  It is <u>not</u> Fannie Mae that is assembling and evaluating the applicant's information.  Rather, it is the software that Fannie Mae has licensed or leased to the lender which is assembles or analyzes the applicant's information.  Fannie Mae

---

[32]Complaint at 6-7, ¶ 22, Docket No. 1.

merely provides access to the DU system to assist the lenders with purchase eligibility guidance.  The FTC has taken the position that "[a] seller of software to a company that uses the software product to process credit report information is not a CRA because it is not 'assembling or evaluating' any information."[33]  Because Fannie Mae is not actively involved in the compilation of the consumer information, it is not regularly assembling and evaluating consumer information and thus it cannot be a "consumer reporting agency."[34] See Thomas v. Cendant Mortg., Case No. Civ.A. 03–167, 2004 WL 2600772, at *4 (E.D. Pa. Nov. 15, 2004) (holding that Freddie Mac and Fannie Mae were not "consumer reporting agencies" because "[t]heir automated underwriting tools review information assembled by a lender from the credit application, credit report, and other consumer reports and provide the lender with a preliminary assessment of whether the loan would meet the eligibility criteria for purchase by Freddie Mac or Fannie Mae");  Barnes v. DiTech.Com, Case No. 03-CV-6471, 2005 WL 913090, at *4-5 (E.D. Pa. April 19, 2005) (noting that, in connection

---

[33]40 Years of Experience with the Fair Credit Reporting Act:  An FTC Staff Report With Summary of Interpretations at 29, (July 2011); see also, October 27, 1997 Informal Opinion Letter:  Cast (opining that a software provider of a program that merged information from different sources into a final credit report would not be a "consumer reporting agency" because the software provider is not assembling the information.  "The software ... could be said to assemble and evaluate the information, but the software provider no longer has any connection at all to the information.").

[34]Because Fannie Mae does not regularly assemble or evaluate consumer information, the court need not consider whether Fannie Mae meets the other three factors necessary to make it a consumer reporting agency.

with a DU Findings Report, "Fannie Mae did not collect and evaluate [Barnes'] credit information, nor did it direct or recommend whether [DiTech] should approve [Barnes'] loan application.  In fact, Fannie Mae did not engage in any affirmative action on [Barnes'] application for credit.").

Fannie Mae also argues that it is not a "consumer reporting agency" because it is acting as a limited agent for the lenders that use the DU system.  However, as plaintiffs are quick to point out, there are no allegations in their complaint that would suggest that Fannie Mae is a joint user.  Rather, plaintiffs have alleged that Fannie Mae functions independently of its subscribing lenders and that it is licensing or leasing its DU system to lenders for a fee.  But, as discussed above, because Fannie Mae is not regularly assembling and evaluating consumer information, it is not a consumer reporting agency.

<u>FHFA's motion to dismiss</u>

Defendant FHFA moves to dismiss plaintiff's claims against it because plaintiffs have not alleged how the fact of FHFA's conservatorship of Fannie Mae makes it liable under the FCRA.  Plaintiffs do not oppose FHFA's dismissal but request that this dismissal be with the condition that FHFA cannot later move to intervene or otherwise participate in this litigation.  As FHFA is quick to point out however, such an order would be, in effect, an injunction against FHFA from taking action in this lawsuit, if FHFA at some later point, determined such action was necessary.  Such an injunction is not permissible under federal

law.  See 12 U.S.C. § 4617(f) ("Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver."); see also, Zabriskie, Case No. 13-cv-2260-PHX-SRB, slip op. at 8-9.

Conclusion

Based on the foregoing, defendants' motions to dismiss[35] are granted.  The clerk of court shall enter judgment dismissing plaintiffs' complaint with prejudice.

DATED at Anchorage, Alaska, this 21st day of July, 2014.

/s/ H. Russel Holland
United States District Judge

---

[35]Docket Nos. 14 & 23.