Paul B. Mengedoth, Esq. (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail: paul@mengedothlaw.com

Sylvia A. Goldsmith, Esq. (*Pro Hac Vice*)
**GOLDSMITH & ASSOCIATES, LLC**
20545 Center Ridge Road, Suite 415
Rocky River, OH 44116
Tel: (440) 934-3025
Fax: (440) 934-3026
E-mail: goldsmith@goldsmithlawyers.com

*Counsel for the Plaintiffs*
*James and Katherine McCalmont*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| James and Katherine McCalmont, married individuals, | Case No. 2:13-cv-02107-JJT |
| Plaintiffs, | |
| v. | PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH MEMORANDUM OF POINTS AND AUTHORITIES |
| Federal National Mortgage Association, | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... II

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

   I.   STANDARD OF REVIEW .................................................................................... 1

   II.   FANNIE MAE IS, AS A MATTER OF LAW, A CONSUMER REPORTING AGENCY WHEN IT MAKES LOAN ORIGINATION RECOMMENDATIONS THROUGH ITS DESKTOP UNDERWRITER SYSTEM. ........................................... 2

   III.   DESKTOP UNDERWRITER FINDINGS REPORTS ARE CONSUMER REPORTS. .................................................................................................... 4

   IV.   THE FCRA WAS INTENDED TO AND DOES GOVERN FANNIE MAE'S FURNISHING OF DU FINDINGS REPORTS TO MORTGAGE LENDERS WHO ARE CONSIDERING A CONSUMER'S ELIGIBILITY FOR A MORTGAGE LOAN. ............................................................................................................. 6

   V.   FANNIE MAE HAS ALREADY FULLY LITIGATED AND LOST THE EXACT ISSUE PRESENTED HERE IN THE *ZABRISKIE* CASE, AND IT SHOULD BE PRECLUDED FROM RELITIGATING THAT ISSUE NOW. ........................... 10

   VI.   CONCLUSION. ................................................................................................ 16

CERTIFICATE OF SERVICE ..................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases:**

*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ........................10

*American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3rd Cir. 1994) ...................................................................................................10

*Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003).............10, 11

*Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982) ................................................................7

*Collins v. D.R. Horton, Inc.*, 505 F.3d 874 (9th Cir. 2007) ..............................................16

*Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001) .......................................7

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)............................7

*Guimond v. Trans Union Credit Information Company*, 45 F.3d 1329 (9th Cir. 1995) ....7

*Hydranautics v. Filmtec Corp.*, 204 F.3d 880 (9th Cir. 2000).........................................11

*Kates v. Croker National Bank*, 776 F.2d 1396 (9th Cir. 1985) .......................................7

*Kendall v. Visa USA*, 518 F.3d 1042 (9th Cir. 2008) .......................................................11

*McCalmont v. Federal National Mortgage Association*, 677 F. App'x 331 (9th Cir. 2017)...........................................................................................8, 9, 10, 16

*Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ............10

*Nunnaly, Jr. v. Equifax Information Services, LLC*, 451 F.3d 768 (11th Cir. 2006) ........4

*Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848 (9th Cir. 1997) 11

*Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916 (9th Cir. 2004)......................................1

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ......................................................................................................10, 11

ii

*Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992) ........................................................10, 11

*San Diego Police v. San Diego Retirement System*, 568 F.3d 725 (9th Cir. 2009) .........1

*Sears Mortgage Corp. v. Rose*, 634 A.2d 74 (N.J. 1993) ................................................10

*St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881 (5th Cir. 1989) ............................7

*Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001) ...................4

*Treadway v. Gateway Chev. Olds., Inc.*, 362 F.3d 971 (7th Cir. 2004) ...........................7

*Tripati v. Henmen*, 857 F.2d 1366 (9th Cir. 1988)............................................................16

*United States Internal Revenue Serv. v. Palmer*, 207 F.3d 566 (9th Cir. 2000) .............11

*Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320 (11th Cir. 1998)................................5

*Zabriskie v. Federal National Mortgage Association,* 109 F.Supp.3d 1178 (D. Ariz. 2014)........................................................................................................................2

*Zabriskie v. Federal National Mortgage Association*, unreported, No. CV-13-02260-PHX-SRB (D. Ariz. May 1, 2017) (J. Bolton) ........................................11, 13, 14, 15

Statutes:

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* ......................................1

15 U.S.C. § 1681(a)(1) .....................................................................................................6
15 U.S.C. § 1681(b) ..........................................................................................................6
15 U.S.C. § 1681a(d) .....................................................................................................1, 8
15 U.S.C. § 1681a(f) .........................................................................................................2
15 U.S.C. § 1681e(b).........................................................................................................8
15 U.S.C. § 1681g(g)(1)(B)(ii) .........................................................................................9


**Other Authorities:**

116 Cong. Rec. 36570 (1970) ..........................................................................................7

iii

Come now Plaintiffs, James and Katherine McCalmont, and pursuant to Fed. R. Civ. P. 56 and LRCiv. 56.1, respectfully ask this Court to make an affirmative ruling on the core legal question at issue here, *i.e.*, the applicability of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* to the actions of Defendant, Federal National Mortgage Association ("Fannie Mae"), in this case.

There are no genuine issues of material fact as to whether Fannie Mae is a consumer reporting agency as defined by 15 U.S.C. 1681a(f), and whether its Desktop Underwriter Findings reports are consumer reports as defined by 15 U.S.C. § 1681a(d). In fact, these issues already have been litigated vigorously and fully by Fannie Mae, culiminating with summary judgment being entered against Fannie Mae on these very questions on a substantively-identical factual record. *See Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-02260-PHX-SRB (D. Ariz. February 24, 2016) (J. Bolton) (Dkt. 155). As such, Plaintiffs are entitled to judgment as a matter of law on these issues.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.  STANDARD OF REVIEW.**

On a motion for summary judgment, the Court must decide "whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *San Diego Police v. San Diego Retirement System*, 568 F.3d 725, 733 (9th Cir. 2009) citing *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir. 2004). The instant motion seeks a summary ruling that there are no genuine issues of material fact as to the elements underlying the applicability of the FCRA here, and so, Plaintiffs are entitled to judgment on this issue as a matter of law.

## II. FANNIE MAE IS, AS A MATTER OF LAW, A CONSUMER REPORTING AGENCY WHEN IT MAKES LOAN ORIGINATION RECOMMENDATIONS THROUGH ITS DESKTOP UNDERWRITER SYSTEM.

The FCRA broadly defines "consumer reporting agency" as follows:

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer.

15 U.S.C. § 1681a(f). Based on everything included in the extensive record that has been developed here, there can be no dispute that Fannie Mae satisfies this definition when it conducts its own proprietary, high-level, independent evaluation of consumer credit report and other information for purposes of providing an underwriting analysis and recommendation to mortgage lenders in the form of a DU Findings Report. *See generally* Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment ("SOF") at ¶¶ 1-33.[1]

First, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ SOF at ¶¶ 67-68.

Second, while Fannie Mae is a leading secondary mortgage market participant, it undeniably wears an additional hat, participating in the loan origination process through its dynamic electronic Desktop Underwriter platform. In this role, Fannie Mae assists its customers, *i.e.* mortgage lenders and brokers, with loan origination and, in 2012 alone, ████████████████████████████████████████████████████████████

---

[1] In fact, this Court has previously commented "there is little room for doubt that Fannie Mae's actions fall within the scope of the Act's protection." *Zabriskie v. Federal National Mortgage Association,* 109 F.Supp.3d 1178, 1184 (D. Ariz. 2014).

████████████████████████████████████████████████. SOF at ¶¶ 15, 68. This certainly qualifies as "regularly" engaging in the subject business.

Third, while the FCRA definition of consumer reporting agency requires either assembling *or* evaluating of information, Fannie Mae does both. For instance, Fannie Mae pulls together, *i.e.*, assembles, a variety of information through the Desktop Underwriter workflow. *See* SOF at ¶¶ 8, 9, 14, 21, 22. And this information is stored by Fannie Mae for use during (and even after) a recommendation is made. SOF at ¶ 10.

Furthermore, Fannie Mae witnesses readily concede, as they must, that Fannie Mae "evaluates" loan application and credit report data. SOF at ¶ 18. ████████ ████████████████████████████████████████████████████████. SOF at ¶¶ 16-22. ███████████████████████████████████████████████████████ (emphasis added)." SOF at ¶ 17.

Fourth, as described above, the very reason Fannie Mae assembles and evaluates consumer credit report and loan application through the Desktop Underwriter system is to make a *recommendation* to the lender/broker through the ultimate output, the Desktop Underwriter Findings report. SOF at ¶¶ 2, 23-25. This self-contained, multi-page report is electronically communicated to the lender/broker, and contains not only Fannie Mae's ultimate recommendation but also a "Summary" of Fannie Mae's various considerations including a "Risk/Eligibility" section, an "Observations" section, and a final section title "Underwriting Analysis Report," it provides specific items directly from the consumer credit report like account information and credit scores. SOF at ¶¶ 32, 33.

Finally, there is no dispute that all transmissions necessary for operation of the Desktop Underwriter system – from the initial submission of loan application information to the importation of raw credit data to the sharing of the ultimate recommendation in the Desktop Underwriter Findings report – are done electronically

thereby establishing the requirement for the use of interstate commerce.  *See*, *e.g.*, SOF at ¶¶ 5, 10, 12, 32.

The record evidence is clear and undisputed as to each and every element of the definition of consumer reporting agency. There remains no genuine issue of material fact as to whether Fannie Mae is a consumer reporting agency when it makes a loan origination recommendation through its electronic Desktop Underwriter platform. As such, Plaintiffs are entitled to judgment as a matter of law on this issue.

## III. DESKTOP UNDERWRITER FINDINGS REPORTS ARE CONSUMER REPORTS.

The FCRA defines a "consumer report" as: (1) any written, oral, or other communication of any information by a consumer reporting agency (2) bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living (3) which is used or expected to be used or collected in whole or in part (4) for the purpose of serving as a factor in establishing the consumer's eligibility for generally, credit, insurance or employment purposes; or (C) any other purpose authorized under Section 1681b. *See* 15 U.S.C. § 1681a(d)(1). The record evidence establishes each of these necessary elements without question.

First, a consumer report is information communicated to a third party. *See* 15 U.S.C. § 1681a(d) (consumer reports involve "written, oral, or other communications or any information"). *See also Nunnaly, Jr. v. Equifax Information Services, LLC*, 451 F.3d 768, 772 (11th Cir. 2006). Irrefutably, when a loan application makes it through the Desktop Underwriter workflow, a Desktop Underwriter Findings Report is returned to the lender (or broker) who requested the recommendation. SOF at ¶¶ 1, 2, 3, 23. With respect to the McCalmonts, this occurred at least eight (8) times with at least two (2) different lenders in 2012 and 2013 alone. SOF at ¶¶ 34, 35, 37, 41, 42, 44.

Second, a consumer report is information bearing on a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal

4

characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1).[2] Through the Desktop Underwriter Findings Report, Fannie Mae makes a specific recommendation to the lender/broker about the likelihood that the potential borrower will actually repay the prospective loan, a fact that undeniably bears on the consumer's credit worthiness and/or capacity. SOF at ¶¶ 3, 4 ("DU evaluates the probability of future serious delinquency and arrives at an underwriting recommendation by relying on a comprehensive examination of risk factors in a mortgage application."). In fact, the record is replete with details of ████████████████████████████ ████████████████████████████████████████████████ ██████ ████ ██ ████ ██ ████ ██ █ ████ ████████ █ ████████████████████████████ SOF at ¶¶ 16-22. The ultimate output, the DU Findings Report, provides a "Risk/Eligibility" section, an "Observations" section, and a final section title "Underwriting Analysis Report," as well as specific items directly from the raw credit report data Fannie Mae received (like account information and credit scores), all of which bear directly on the consumer's creditworthiness and credit standing. SOF at ¶¶ 32, 33.

Third, to be a consumer report, the consumer must show that the subject information was "used," "expected to be used," *or* "collected" "in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for, *inter alia*, credit, insurance of employment. *See, e.g., Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320, 1323-24 (11th Cir. 1998).[3] The undisputed record evidence is that Fannie

---

[2] Since the scope of the definition is exceedingly broad and a report need only bear on one of these seven factors, a wide variety of information about a consumer satisfies this part of the definition of a consumer report. *See, e.g., Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809, 813 (D.C. Cir. 2001).

[3] The expansive definition of a consumer report includes within its scope that the subject information could be "expected to be used" for the purpose of determining a consumer's eligibility for credit. 15 U.S.C. § 1681a(d). Therefore, Fannie Mae need not ultimately participate directly in any single transaction for which a Desktop Underwriter Findings report was issued to a lender or broker; it is sufficient that

Mae collects the subject information for lenders/brokers to determine consumers' eligibility for credit. Fannie Mae itself readily describes the Desktop Underwriter system as a tool to help lenders determine whether or not to make a particular loan. *See* SOF at ¶¶ 1, 2, 3. Moreover, ███████████████████████████████ ████████████████████████████████████████████████████████████████ – centers entirely on the credit risk posed by the borrower so as to decide whether or not to make a particular loan to him or her. SOF at ¶¶ 16-22. In fact, the output of this assessment is a specific recommendation to the lender as to whether that particular loan should be made. SOF at ¶¶ 32, 33.

Based on the abundance of undisputed evidence in the record as highlighted here, there exists no genuine issue of material fact as to whether or not the Desktop Underwriter Findings Reports created and furnished to third parties by Fannie Mae through its Desktop Underwriter platform constitutes a consumer report under the broad definition of the FCRA. As such, Plaintiffs are entitled to judgment as a matter of law on this issue.

**IV. THE FCRA WAS INTENDED TO AND DOES GOVERN FANNIE MAE'S FURNISHING OF DU FINDINGS REPORTS TO MORTGAGE LENDERS WHO ARE CONSIDERING A CONSUMER'S ELIGIBILITY FOR A MORTGAGE LOAN.**

Our banking system is dependent upon lending decisions being made on accurate information. *See* 15 U.S.C. § 1681(a)(1) ("Inaccurate credit reports directly impair the efficiency of the banking system . . . ."). Through passage of the FCRA, Congress expressed the need and its intention to protect the integrity of this system by imposing "grave responsibilities" on entities who inject information into the lending decision making process:

---

Fannie Mae furnished any such report(s) in whole or in part in a lender/broker's establishing the McCalmonts' eligibility for credit. *See generally Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (Act is to be liberally construed to effectuate legislative purposes of preventing "transmission of inaccurate information[.]").

It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

15 U.S.C. § 1681(b).

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them" and "to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989)). A "liberal construction of the FCRA" is thus necessary to support these objectives. *Id.* (citing *Kates*, 776 F.2d at 1397).

While it has been almost fifty (50) years since the FCRA was passed, its protections are of significant relevance and perhaps of even greater necessity today in our ever-changing information-sharing age:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)). *See also* ER93 (stating "[a]s several Circuit Courts of Appeal have noted, Congress enacted the FCRA in recognition of the large impact a credit report can have on a person's life by affecting her access to employment and credit." (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009); *Treadway v. Gateway Chev. Olds., Inc.*, 362 F.3d 971, 981-82 (7th Cir. 2004); *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 414-415 (4th Cir. 2001)).

7

1    At issue here is the applicability of the FCRA to Fannie Mae's injection into the

2  mortgage lending decision-making process of its DU Findings Report, a multi-page

3  report that is electronically communicated by Fannie Mae to mortgage lenders as the

4  "output of the Desktop Underwriter system," principally containing Fannie Mae's

5  "Recommendation" to the lender about a particular loan application the lender first

6  submits for review to Fannie Mae.

7    Irrefutably, mortgage lenders use DU Findings Reports when connected into

8  Fannie Mae's dynamic electronic platform in deciding whether or not to make particular

9  mortgage loans to consumers. SOF at ¶¶ 1, 2, 34, 35, 41, 42.  Fannie Mae cannot

10 legitimately challenge that its injection of a report containing Fannie Mae's own

11 proprietary, high-level, independent evaluation of consumer credit report and other

12 information bearing on the creditworthiness of the consumer is never used or expected

13 to be used by mortgage lenders as a factor in determining whether the loan will be

14 made. To do so strains credibility, and certainly Congress never intended such activity

15 underpinning the very explicit purpose of the Act itself to fall outside a liberal reading

16 of the FCRA's definitions of "consumer report" and "consumer reporting agency." 15

17 U.S.C. § 1681a(d) and (f).

18    The Ninth Circuit Court of Appeals specifically analyzed in this case whether

19 Fannie Mae is subject to the accuracy mandates of 15 U.S.C. § 1681e(b) when it

20 furnishes DU Findings Reports to mortgage lenders falsely identifying short sales as

21 foreclosures in such reports, holding that the McCalmonts sufficiently stated a claim for

22 relief against Fannie Mae. *McCalmont v. Federal National Mortgage Association*, 677

23 F. App'x 331 (9th Cir. 2017). In reversing the original dismissal of Plaintiffs' claims, the

24 Ninth Circuit held as follows:

25    The McCalmonts' complaint contains sufficient plausible allegations to raise a
     reasonable inference that Fannie Mae "regularly engages … in the practice of
26   assembling or evaluating consumer credit information or other information on
     consumers for the purpose of furnishing consumer reports to third parties," and
27   therefore qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f).
28   Specifically, it alleges that Fannie Mae assembles various reports containing

8

consumer credit information, stating that "[t]hrough the DU system, Fannie Mae obtains an applicant's three-file and/or 'tri-merge' consumer report from either a reseller of credit information, or one or more of the three (3) major credit repositories" and "Fannie Mae's DU system assembles, reviews, assesses and evaluates all of the information it obtains from the lender and/or broker, and the consumer reporting agencies and/or resellers, including the consumer reports, and generates its own report, known most frequently as the Desktop Underwriting Findings report ('DU Findings Report')." The complaint also makes the plausible allegation that Fannie Mae evaluates the consumer credit information, stating that "the DU Findings Report contains findings, conclusions, comments and results reached by Fannie Mae concerning the applicant's credit and his or her 'eligibility' for loan purchase by Fannie Mae."

*McCalmont*, *supra*, 677 F. App'x at 331-332. Thus, the Ninth Circuit has already concluded that Plaintiffs may maintain claims against Fannie Mae for alleged violations of the accuracy mandates of the FCRA in Fannie Mae's operation of its Desktop Underwriter system, specifically rejecting any notion that Congress intended to exclude Fannie Mae from the mandates for accuracy set forth in the FCRA for all consumer reporting agencies:

We reject Fannie Mae's argument that it is not a consumer reporting agency as a matter of law based on the language of 15 U.S.C. § 1681g(g)(1)(B)(ii), which states that a mortgage lender should disclose a credit score generated by Fannie Mae using the procedures applicable to credit scores not obtained from consumer reporting agencies. Reading this section in context, we see no indication that Congress intended to exclude Fannie Mae from the definition of "consumer reporting agency," and we decline to read such an intent into the statute.

*McCalmont*, *supra*, 677 F.App'x at 334.

The Ninth Circuit also rejected Fannie Mae's attempt to couch its operation of Desktop Underwriter merely in terms of a software licensing arrangement to justify exclusion of Fannie Mae from coverage under the FCRA. For instance, Fannie Mae argued it should not be considered a consumer reporting agency because the underlying software licensing agreement between Fannie Mae and the lender granting lenders access to the Desktop Underwriter electronic platform creates a principal/agent relationship between the two, and Fannie Mae is merely acting on the lender's behalf

when it provides DU Findings Reports to mortgage lenders during the loan origination process. *McCalmont*, 677 F.App'x at 332. In rejecting this argument, the Ninth Circuit concluded that Fannie Mae's "ambiguous statement [in its licensing agreement] that Fannie Mae is deemed to be the agent of the lender for certain limited purposes at most raises a triable issue of fact that cannot be resolved at the motion to dismiss stage." *Id*. The now-fully-developed evidentiary record completely debunks this argument.[4]

## V. FANNIE MAE HAS ALREADY FULLY LITIGATED AND LOST THE EXACT ISSUE PRESENTED HERE IN THE *ZABRISKIE* CASE, AND IT SHOULD BE PRECLUDED FROM RELITIGATING THAT ISSUE NOW.

Collateral estoppel or "issue preclusion" is a common law estoppel doctrine that prevents a party from relitigating a fact or issue that previously has been determined. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citing *Montana v. United States*, 440 U.S. 147, 152, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

"Offensive non-mutual collateral estoppel is a version of the doctrine that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)). *See also Pena*

---

[4] "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3rd Cir. 1994) (quoting *Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). Not only is there no evidentiary support that the purported principal, *i.e.* an approved lender or broker, consented to or actually does have any right of control over Fannie Mae's operation of the Desktop Underwriter electronic platform, Fannie Mae is the one that designs, directs and carefully limits its customers' use and access of Fannie Mae's proprietary electronic platform. *See, e.g.*, SOF at ¶¶ 7, 11, 12, 19, 23, 29.

*v. Gardner*, 976 F.2d 469, 472 (9ᵗʰ Cir. 1992) ("Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.").

"Offensive collateral estoppel may be used when: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *Pena*, *supra*, 976 F.2d at 47. *See also Kendall v. Visa USA*, 518 F.3d 1042, 1050 (9ᵗʰ Cir. 2008) (citing *United States Internal Revenue Serv. v. Palmer*, 207 F.3d 566, 568 (9ᵗʰ Cir. 2000).

"District courts have discretion whether to apply offensive non-mutual collateral estoppel." *Appling*, *supra*, 340 F.3d 769 (citing *Parklane Hosiery*, 439 U.S. at 326 n.4). The party asserting preclusion bears the burden of showing wth clarity and certainty what was determined by the prior judgment." *Hydranautics v. Filmtec Corp.*, 204 F.3d 880, 885 (9ᵗʰ Cir. 2000) (quoting *Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848, 850 (9ᵗʰ Cir. 1997)). *See also Parklane*, *supra*, 439 U.S. at 329.

Here, the instant case presents an identical claim that has been vigorously defended by Fannie Mae for the last several years, culminating in a final judgment against Fannie Mae in *Zabriskie v. Federal National Mortgage Association*, unreported, No. CV-13-02260-PHX-SRB (D. Ariz. May 1, 2017) (J. Bolton). The following description of the procedural and substantive history of *Zabriskie* demonstrates that all elements of collateral estoppel exist here.

The *Zabriskie* plaintiffs filed their complaint on November 5, 2013, stating a single claim for relief under the FCRA, and alleging, like here, that Fannie Mae violated the accuracy mandates of 15 U.S.C. § 1681e(b) by furnishing DU Findings Reports that falsely identified the Zabriskies as having a foreclosure when they, like the McCalmonts, actually previously had a short sale. *Zabriskie,* CV-13-02260-PHX-SRB (Dkt. 5).

By Order dated April 17, 2014, this Court denied Fannie Mae's Rule 12(b)(6) Motion to Dismiss the *Zabriskie* complaint. *See Zabriskie, supra*, 109 F.Supp.3d at 1184. In so doing, the Court considered the statutory definition of "consumer reporting agency" under 15 U.S.C. § 1681a(f), and articulated the definition to consist of five elements: "(1) the company must be paid for its work or be working on a 'cooperative nonprofit basis,' (2) it must be in the business of (that is to say, 'regularly') (3) 'assembling or evaluating consumer credit information or other information on consumers' (4) 'for the purpose of furnishing consumer reports to this parties,' and (5) must use interstate commerce to achieve these aims." *Zabriskie*, *supra*, 109 F.Supp. at 1183.

On October 13, 2015, the *Zabriskie* plaintiffs moved for partial summary judgment on the limited issue of whether Fannie Mae is a consumer reporting agency when it assembles and/or evaluates consumer credit reports and other information about the consumer for the purpose of furnishing its DU Findings Reports to lenders and brokers. Simultaneously, Fannie Mae moved for summary judgment on all issues, including not only whether it was a consumer reporting agency, but also whether it violated the accuracy mandates of 15 U.S.C. 1681e(b) and whether any such alleged violation caused harm to the plaintiffs.

On January 4, 2016, oral argument was heard on the parties' cross motions. The Honorable Susan R. Bolton narrowed the issues to be discussed, as Fannie Mae conceded that of the five factors to be considered when determining whether an entity meets the definition of CRA, three of them were not in dispute:

> THE COURT: So I would like to keep looking at these five elements of what constitutes a credit reporting agency, and we agree that the defendant, at least at that time, was paid for the software.
> MR. MILLER: For purposes of this summary judgment motion, that's correct, Your Honor.
> THE COURT: We agree that this matter involves interstate commerce.
> MR. MILLER: Yes, Your Honor.

THE COURT: We agree that this is done regularly,
whatever it is that defendant does is done regularly?
MR. MILLER: Yes.
THE COURT: And so it's three and four?
MR. MILLER: That's right.

*Zabriskie* Transcript (a copy of which is attached hereto as Exhibit 1) at 4. Thus,

Zabriskie centered on "whether Fannie Mae 'assembl[es] or evaluat[e]s consumer credit

information' when it licenses its DU software and, if so, whether it does so 'for the

purpose of furnishing consumer reports to third parties[.]'" *Zabriskie* MSJ Order, *supra*,

at 5.

Notably, Fannie Mae conceded at oral argument that Fannie Mae is the actor

responsible for the messaging appearing on a DU Findings Report advising a lender

whether it will agree to purchase, or not, a prospective mortgage loan:

THE COURT: But the actual process of coming up with
the, yes, we will buy your loan if you make it, or, no, we
won't unless you do it manually, is Fannie Mae's product that
does that, and assuming that there wasn't some error made by
the lender in putting the information in, it's Fannie Mae that
comes up with that result?
MR. MILLER: Yes.

*Zabriskie* Transcript at 17. Fannie Mae also admitted that it does more than merely

license software:

THE COURT: Right, but we are talking about the DU
report.
MR. MILLER: Yes.
THE COURT: And the question is, did they evaluate
consumer credit information and furnish a consumer report to
the mortgage lender?
MR. MILLER: Those are the questions, and that's --
the dispute on this, as I see it at least, or as I understand
it from the papers, is it Fannie Mae or the software?

***
THE COURT: Their proprietary software generated a
report.
MR. MILLER: They licensed the software to the lender.
THE COURT: But the lender had nothing to do with how

13

the report came out.
MR. MILLER: Well, the lender populated the fields of
the report.
THE COURT: Right, but there was some evaluation by
the software generating a report that said, foreclosure
caution, or whatever the language is, but foreclosure is there.
MR. MILLER: Again, the issue that we point out is the
distinction, is -- this is the Cast opinion and the other case
law that we cited, is that Fannie Mae, or is that the lender
using the software? And we -- at various times in the briefing
--
THE COURT: Well, I mean, if it was an Excel
spreadsheet, there's no evaluation, except maybe adding and
subtracting, so I would be with you on that. But this isn't a
question of just making it easy to read a whole bunch of
information and organizing it in a fashion that somebody can
use it to see things in a different format than in a format of
these many, many, many pieces of information that were fed in
and including but not limited to the tri-merge report. It did
more than that.
MR. MILLER: It did.
THE COURT: It processed the information in some way
that it came up with an evaluation that it gave to the person
that paid for the software.

*Zabriskie* Transcript at 39-40.

On February 24, 2016, this Court denied Fannie Mae's motion for summary judgment and granted the Zabriskies partial summary judgment. *See generally Zabriskie MSJ Order.* In so doing, the Court noted Fannie Mae did not contest the undisputed material facts showing an evaluation of consumer credit information by Desktop Underwriter:

Fannie Mae does not dispute that the DU software evaluates a borrower's loan application information and credit data by functioning as Plaintiffs have described above. (*See* Doc. 121, Def.'s Opp'n to PSOF ("DCSOF") ¶¶ 26-34.) Fannie Mae instead argues that because the evaluation of consumer credit information occurs within the DU system, it is the lender to which the software is licensed, not Fannie Mae, who actually evaluates the consumer information. (Def.'s MSJ at 12-16; Doc. 120, Def.'s Sealed Resp. to Pls.' MPSJ ("Def.'s Resp.") at 9-14.) The Court previously rejected this argument when it was raised in Fannie Mae's Motion to Dismiss and Fannie Mae, without resorting to any

14

additional persuasive evidence, now requests that the Court reconsider its prior conclusion. (See Doc. 13, Mot. to Dismiss at 9-13; Apr. 17, 2014 Order at 7-8.)

*Zabriskie* MSJ Order at 6. While Fannie Mae did not dispute *any* of the DU Workflow described in the record evidence, this Court nonetheless conducted a careful review of the extensive record on point, and reasoned as follows:

> In light of the undisputed evidence in the record, however, the Court concludes that Fannie Mae evaluates a borrower's credit information by licensing its DU software. It is undisputed that Fannie Mae created the computer code that comprises the DU software application and that DU uses Fannie Mae's proprietary algorithms to evaluate the borrower's information and determine whether Fannie Mae will likely purchase the loan. There is no evidence in the record that the lender plays any significant role in evaluating the borrower's information or generating the results from the DU software, beyond inputting the borrower's personal and credit information into the software. The record also does not support Fannie Mae's argument that the DU software is "essentially an electronic version of the Selling Guide" and therefore functions as an automated version of a lender's manual underwriting of a particular loan. Although the Selling Guide directs the lender to consider certain factors in manually underwriting a loan application, it does not specifically direct how these factors should be weighed or considered. The DU software, however, uses Fannie Mae's proprietary formulas to automatically weigh a consumer's information and generate a FMCA and DU Score. Because DU uses Fannie Mae's proprietary algorithms to generate the information in the DU Findings report, including its ultimate recommendation, the Court cannot conclude that a lender is capable of replicating the results of DU Findings by manually underwriting the same loan application using the Selling Guide. Based on the undisputed evidence in the record, the Court concludes that Fannie Mae evaluates consumer information when it licenses its DU software to lenders.

*Zabriskie* MSJ Order at 6-7.

*Zabriskie* proceeded to trial in August 2016. Following a five-day jury trial, a unanimous jury returned a verdict in favor of the Zabriskies on all issues. The jury found that Fannie Mae failed to follow reasonable procedures to assure the maximum possible accuracy of the information Fannie Mae furnished to their potential lenders in DU Findings Reports about the Zabriskies by expressly representing that they had a

foreclosure when, in fact, that was untrue, and concluding that the Zabriskies were damaged as a result of this failure.[5]

The foregoing confirms that all elements necessary to preclude Fannie Mae from relitigating the issue of whether it is a consumer reporting agency issuing consumer reports as defined by the FCRA exist here. While the offensive use of collateral estoppel may not typically promote judicial economy, *Parklane Hosiery*, *supra*, 439 U.S. at 330, the instant case presents a situation where it does: Fannie Mae has vigorously defended against the identical claim at issue here – making, abandoning, and rehashing the same arguments across both cases – for more than five (5) years. This is precisely why the United States Supreme Court did not abandon the doctrine as a general rule, but instead chose "to grant trial courts broad discretion to determine when it should be applied." *Id.* This Court should exercise that discretion to collaterally estop Fannie Mae from relitigating the issue of the applicability of the FCRA to its operation of the Desktop Underwriter platform.

## VI.  **CONCLUSION.**

There are no genuine issues of material fact as to whether Fannie Mae is a consumer reporting agency as defined by 15 U.S.C. 1681a(f), and whether its Desktop Underwriter Findings reports are consumer reports as defined by 15 U.S.C. § 1681a(d). For all the foregoing reasons, Plaintiffs respectfully ask this Court to enter judgment in their favor on these issues.

---

[5] Fannie Mae has appealed the final judgment in *Zabriskie*. However, the existence of a pending appeal in the *Zabriskie* case is not directive on the question of whether Fannie Mae should be precluded from relitigating the same issue here. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882-883 (9th Cir. 2007) (citing *Tripati v. Henmen*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("We have held that a final judgment retains its collateral estoppel effect, if any, while pending appeal. * * * [T]he benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment.").

Dated this 30th day of March 2018.    Respectfully submitted,

/s/ *Sylvia A. Goldsmith*
Sylvia A. Goldsmith, Esq. (*Pro Hac Vice*)
**GOLDSMITH & ASSOCIATES, LLC**
20545 Center Ridge Road, Suite 415
Rocky River, OH 44116
Tel: (440) 934-3025
E-mail: goldsmith@goldsmithlawyers.com

Paul B. Mengedoth, Esq. (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail: paul@mengedothlaw.com

*Counsel for Plaintiffs*
*James and Katherine McCalmont*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory J. Marshall
Erica J. Stutman
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
gmarshall@swlaw.com
estutman@swlaw.com

Michael B. Miller
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900
mbmiller@mofo.com

Angela Kleine
Ben Patterson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Akleine@mofo.com
bpatterson@mofo.com

 /s/ *Sylvia A. Goldsmith*
Sylvia A. Goldsmith, Esq.

Attorney for Plaintiffs
James and Katherine McCalmont

18