1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| James McCalmont, *et al.*, | No. CV-13-02107-PHX-JJT |
|---|---|
| Plaintiffs, | **ORDER** |
| v. | |
| Federal National Mortgage Association, *et al.*, | |
| Defendants. | |

At issue is Defendant's Motion for Summary Judgment (Doc. 107), to which Plaintiffs filed a Response (Doc. 137) and Defendant filed a Reply (Doc. 147). Also at issue is Plaintiffs' Motion for Partial Summary Judgment (Doc. 118), to which Defendant filed a Response (Doc. 133) and Plaintiffs filed a Reply (Doc. 151).

## I.  BACKGROUND

Plaintiffs James and Katherine McCalmont filed a Complaint (Doc. 1, Compl.) on October 16, 2013, alleging that they were "subjected to the repeated violation of and intentional non-compliance with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*" (Compl. ¶ 1.) Defendant, Federal National Mortgage Association ("FNMA"), is a government-sponsored entity created by Congress to purchase mortgage loans from lenders and thereby help stabilize the market for residential mortgages. Defendant licenses an automated underwriting system known as Desktop Underwriter ("DU"). (Compl. ¶¶ 18–19; Answ. ¶ 19.) DU informs lenders whether a prospective loan would be eligible for purchase by Defendant.

Lenders who use DU input a consumer's "tri-merge" credit report, which consists of the consumer's credit reports from three of the top credit repositories in the United States. (Compl. at ¶ 21.) From there, DU generates a Findings Report that details the consumer's credit and concludes whether or not a loan made to that consumer would be eligible for purchase by Defendant. (Compl. ¶ 30.) A Findings Report that lists a "Refer with Caution" rating indicates that Defendant would not purchase the subject mortgage loan.

The rating produced in a DU Findings Report is based on the consumer's credit history—most relevant here, the program considers whether a consumer has completed a short sale of a property or whether a consumer's property has been foreclosed upon. A loan to a consumer who made a short sale of a mortgaged property may still be eligible for purchase by Defendant, as long as the short sale occurred more than two years before the consumer's current loan application. But if the consumer previously had a property foreclosed upon, he must wait seven years before any loan made to him becomes eligible for purchase by Defendant. Any application before those seven years are up would come back with a "Refer with Caution" rating and "be ineligible for delivery to [Defendant] as a DU loan."

Plaintiffs allege that Defendant failed to distinguish between a foreclosure and a short sale in its DU algorithm. (Compl. ¶¶ 74–83.) Indeed, Defendant responded to widespread concern about this practice in 2013, when it released "Desktop Underwriter Clarification." (Doc. 1-3, DU Clarification.) Defendant explained that DU reviews "manner of payment" ("MOP") codes associated with important transactions in a consumer's credit history as a way to determine the rating in the DU Findings Report. (DU Clarification at 1.) A foreclosure is indicated by MOP code 8 (foreclosure). And at the time of Defendant's clarification, "no codes provided in the credit report data received by DU [] specifically identify a preforeclosure sale."[1] (DU Clarification.) Thus, Plaintiffs allege

---

[1] Defendant uses the terms "preforeclosure sale" and "short sale" interchangeably. (DU Clarification at 1.)

that any consumer who engaged in a short sale had an MOP code 8 appear on his DU Findings Report, indicating a foreclosure that did not actually occur, and thereby rendering any loan within seven years of the short sale ineligible for purchase by Defendant. (Compl. ¶ 44.)

Plaintiffs negotiated a short sale of their real estate in 2009. (Compl. ¶ 34.) After waiting the requisite two years to apply for a new mortgage loan for a separate property, Plaintiffs were denied conventional mortgage financing multiple times. (Compl. ¶¶ 36–52.) Plaintiffs allege that "the 'foreclosure' notation [] was preventing them from obtaining financing." (Compl. ¶ 52.)

Plaintiffs filed this action, seeking damages under 15 U.S.C. § 1681n and § 1681o, for both willful and negligent violations of the Fair Credit Reporting Act ("FCRA"). (Compl. ¶ 99.) In 2014, Defendant moved to dismiss the case on the grounds that it is not subject to the FCRA. (Doc. 23). District Judge Holland granted Defendant's Motion and dismissed the case. (Doc. 38.) The Ninth Circuit later reversed. (Doc. 48.) The case was remanded and assigned to District Judge Tuchi (Doc. 53.) On March 21, 2018, Defendant filed a Motion for Summary Judgment (Doc. 107). Plaintiffs subsequently filed their own Motion for Partial Summary Judgment (Doc. 118).

**LEGAL STANDARDS**

    **A.**     **Motion for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue"

of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### B. Fair Credit Reporting Act

At issue in this case is an alleged violation of the Fair Credit Reporting Act ("FCRA"). The FCRA governs consumer reporting agencies ("CRAs"). A consumer reporting agency is

> any person which, for monetary fees, dues, or on a cooperate nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Under § 1681e ("Reasonable Procedures provision") of the FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the

individual about whom the report relates." 15 U.S.C. § 1681e(b). A "consumer report" is any

> communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily for personal, family, or household purposes.

15 U.S.C. § 1681a(d)(1).

A CRA may violate the FCRA either negligently or willfully. Under § 1681n ("willful noncompliance section"), a violator is liable to the consumer for: (1) any actual damages between $100 and $1000; (2) punitive damages; and (3) "the costs of the action together with reasonable attorney's fees as determined by the court." U.S.C. § 1681n(a). Under § 1681o ("negligent noncompliance section"), a violator is liable only for actual damages sustained by the consumer and "the costs of the action together with reasonable attorney's fees as determined by the court." U.S.C. § 1681o(a). In other words, a willful violation carries the additional consequence of punitive damages, while a negligent violation does not.

The willful noncompliance section contemplates not only those violations where a CRA acts knowingly, but also where a CRA acts recklessly in violation of the FCRA. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57–61 (2007). A CRA acts in reckless disregard of a consumer's rights when its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Thus, as the Court explained in its July 20, 2017 Order, "a party alleging a willful violation of the FCRA under 15 U.S.C. § 1681n must establish that the defendant's conduct reflected (1) an objectively unreasonable reading of the statute that (2) ran the risk of violating the law substantially greater than the risk associated with a mere careless reading." (July 20, 2017 Order at 5.) Courts consider the following factors to determine whether a reading is objectively reasonable: (1) whether the interpretation is grounded in

the text of the statute; (2) whether there is a lack of guidance from appellate courts or the Federal Trade Commission that might have indicated the reading was incorrect; and (3) whether the FCRA itself is unclear on the issue. *Safeco Ins. Co. of Am.*, 551 U.S. at 69. A CRA who violates the FCRA, but did so based on an interpretation of the Act that was not objectively unreasonable, cannot be liable for a willful violation. That key distinction is at issue before the Court today.

**III.	ANALYSIS**

Plaintiffs claim that Defendant, acting as a consumer reporting agency ("CRA") violated the FCRA either willfully or negligently. Defendant moves for summary judgment on the basis that it is not a CRA, and if it is, that it is not subject to either willful or negligent liability under the FCRA. (MSJ at 6–18.)

The Ninth Circuit's recent memorandum opinion in *Zabriskie v. Federal National Mortgage Association*, 17-16000 (9th Cir. Dec. 26, 2018) is dispositive here. In that similar action, to which Defendant was also a party, the Ninth Circuit held that Defendant is not a CRA and therefore is not subject to the FCRA. The holding resolves the issue before the Court and necessitates granting Summary Judgment must be granted. Plaintiffs allege no causes of action other than violations of the FCRA, and so this case also must be dismissed.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 107).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Partial Summary Judgment (Doc. 118).

**IT IS FURTHER ORDERED** denying as moot Defendant's Motion to Exclude Evan D. Hendricks (Doc. 116), Defendant's Motion to Exclude Lisa Lund (Doc. 117), and Plaintiffs' Motion in Limine to Exclude Testimony of Neal Librock (Doc. 123).

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment for Defendant and close this case.

Dated this 15th day of January, 2019.

Honorable John J. Tuchi
United States District Judge